The Ordinary.
William Zule, late of the county of Hunterdon, died intestate, in or about the month of February, 1856, leaving no next of kin in this state. Letters of administration upon his estate were granted to Joseph Ex-ton, of said county. At April term, 1857, the account of the administrator was exhibited to the Orphans Court of the county of Hunterdon for final settlement, due notice thereof having been given; and having been audited and stated by the surrogate, was reported to and finally settled and allowed by the court. Upon the settlement, there remained in the hands of the administrator for distribution a balance of $1540.
At the ensuing December term, an application was made for a decree of distribution; and it appearing to the court, upon evidence then exhibited, that the intestate, William Zule, had two sons, Robert and William, both of whom died in the lifetime of their father; that Robert left the state twenty-five years prior to the death of his father, and died without leaving children, and that William left three children surviving, it was thereupon ordered and decreed that the balance of said estate remaining in the hands of the administrator should be distributed as follows, to wit, the sum of $513.61 to each of the three children of William Zule, deceased, to wit, William Zule, Christiana, the wife of Milo Cranoung, and Robert Zule.
*504 On or before the thirtieth of July, 1858, the administrator paid over the entire estate in his hands to the several distributees, pursuant to the decree of distribution.
On the seventh of September, 1859, a rule was granted by the court requiring the administrator to show cause why the decree of distribution should not be set aside. On the fourteenth of May, 1860, the rule to show cause was made absolute, and it was ordered and decreed that the decree of distribution, made at December term, 1857, should be set aside and for nothing holden. Erom that decree the administra^ tor has appealed to this court.
It does not appear, from the proceedings of the Orphans Court, at whose instance either the decree for distribution or the order vacating it was made. It may however be fairly presumed, as the fact is alleged to be, that the original decree was made at the instance and on the behalf of the children of William Zule, to whom the money was ordered to be paid; and that the order appealed from vacating the decree of distribution was made at the instance of the persons claiming to be the lawful children of Robert Zule, and as such to be entitled to one half of the estate of the intestate.
In disposing of the appeal, two questions are involved, viz.
1. Was the order of distribution legal.
2. Had the Orphans Court power, under the circumstances which existed, to vacate the order.
The court had undoubted jurisdiction of the subject matter and power to make the decree of distribution. The accounts of the administrator had been finally settled and allowed by the Orphans Court of the county in which the intestate had his domicil and where he died. By that account, a balance was ascertained to be in the administrator’s hands for distribution according to law.' The statute empowers the court to order a just and equal distribution of the net balance of the estate among the next of kindred to the intestate according to their respective rights, and the same distribution to decree and settle. Nix. Dig. 257, § 12.
It is the duty of the court not only to decree that the *505 balance shall be distributed according to law, but to settle and decree to whom and in what proportions the balance is to be paid. The decree is to be specific, not general. The administrator is entitled to a specific decree for his protection in paying out the estate. The next of kin are entitled to it. It constitutes the basis upon which alone they are entitled to sue for and recover their respective shares of the estate. 4 Griffith’s Law Reg. 1192, note 2; Ordinary v. Executors of Smith, 3 Green 92.
The decree of distribution is in its nature a final decree. It concludes the rights of all parties, unless appealed from within six months from the time of making the decree. Nix. Dig. 257, § 12, 560, § 45.
There is no suggestion or pretence of any fraud or collusion in obtaining the decree, or in making distribution under it. It is conceded that the administrator acted in perfect good faith and in strict accordance with the decree of the court. He had in fact no possible interest or motive for acting otherwise. He was in no wise interested in the estate. It was a matter of indifference to him who received the property. All he could ask or obtain at the hands of the court was indemnity in the performance of his official duty.
It is urged that the decree of distribution was properly set aside as null and void because it was not made in compliance with the statute. The law authorizes the court to order a just and equal distribution of the estate among the next of kin of the intestate according to their respective rights, pursuant to law and the rules and limitations thereby prescribed. The decree in question, it is said, does not order an equal distribution among all the next of kin, but gives the entire estate to a part of them only. Hence it is urged that it is unauthorized by the statute and void. This objection, admitting it to be well founded in point of fact, proceeds upon the ground, that if in making the decree of distribution, the court commit any mistake in fact as to the number of the distributees, or any error in law as to their respective rights, the decree is unauthorized by the statute, and there *506 fore null and void. The establishment of this doctrine would render the decree perfectly nugatory. It would establish no right in the next of kin. It would afford no protection to the administrator. The decree would be in no sense final, but would leave every question of law and fact affecting the rights of the parties Open for future litigation. The statute does indeed require that the distribution shall be made to the next of kin, according to their respective rights pursuant to law. But at the same time it refers it to the judgment of the Orphans Court to determine what those rights are and upon whom the law confers the estate. The person to whom a distributive share is allotted by the court is in contemplation of law the person entitled to receive the estate. Nix. Dig. 256, § 11, 258, § 17.
So long as the decree stands in full force unappealed from it is conclusive upon all parties, and cannot be inquired into collaterally, The presumption of law is that it is made in accordance with the requirements of the statute and with the rights of the parties.
It is further urged that the decree of distribution was properly set aside as null and void because the next of kin, at whose instance it was set aside, had no notice, actual or constructive, of the application for such decree. The principle properly stated is, that the person whose rights are to be affected should be a party to the proceeding, and should have an opportunity of being heard; otherwise the decree is not binding upon him, nor conclusive upon his rights. This is believed to be the limit of the doctrine applied to suits between party and party, either at law, in equity, or in the ecclesiastical courts. This brings us to the pith of the controversy in this case, how far does this doctrine apply to and affect a decree for the distribution of an intestate’s estate ? Who constitute the parties to such decree ? What notice, actual or constructive, is required to be given ?
The statute in terms prescribes no notice. It seems to regard the decree of distribution as a mere incident or sequence of the settlement of the administrator’s account. It pro *507 vides that it shall be lawful for the judges of the Orphans Court, after such administrator shall have accounted for and„ touching the estate of the intestate, to order a just and equal distribution of the balance of the estate among the next of kindred to the intestate, &c. The statute prescribes with great minuteness the notice to be given by the administrator of the final settlement of his accounts. It provides that no account of any administrator shall be audited or stated by the surrogate or allowed by the Orphans Court, unless such administrator shall first give at least two months’ notice of such settlement by advertisements set up in five of the most public places of the county in which such settlement is to be made, one whereof shall be sot up in the surrogate’s office of said county, and by publishing the same in one or more newspapers published in said county for the same length of time; and upon due proof of such advertising, made and filed with the surrogate, the court may proceed to decree an allowance of the account. This notice operates as constructive notice to all parties interested in the estate. In contemplation of law they are all before the court, and all entitled to except to the account and to be hoard before the court. The decree of the court on the final settlement and allowance of the account is conclusive upon all parties, except in special cases enumerated in the statute. All persons interested in the estate, as creditors, assignees, legatees, or next of kin, are parties to the proceeding. In contemplation of law they are before the court. They have constructive notice of the proceedings, and the decree for settlement is conclusive of their rights. If they are parties to the proceeding, and before the court for the purpose of having a final settlement made, when do they cease to be • parties ? The proceeding was not instituted merely to enable the administrator to settle his accounts, but also to enable the parties interested to recover their distributive shares, and to this end to have distribution of the estate. And hence the statute provides that when the estate is settled the court may decree distribution. The decree for distribution *508 is not a new proceeding, but is merely ancillary to the decree for settlement.
Both Mr. Griffith and Judge Elmer, than whom few members of our bar have been more familiar with our peculiar Orphans Court system, seem to regard this as the true construction of the statute. Mr. Griffith says, doubtless the true way when any question arises is for the Orphans Court to decree distribution, and from time to time to settle the sum due to any particular person entitled- on application and hearing, &c., or in some proper way to determine the distribution entirely by one decree or the final settlement of the account. 4 Griffith’s Am. Law Leg. 1192, note 2.
Mr. Justice Elmer, after the usual form of notice by an administrator of the settlement of his accounts, gives the form of the decree of the court on settlement, in which is included a specific decree for distribution. In a note to the form he adds: “ the distribution of the balance should always be decreed by the court, this being necessary to entitle the heirs to sue.” If any difficulty arises in ascertaining who are entitled to the balance, the court may order advertisements to -be inserted in the newspapers, examine witnesses, or otherwise inquire into the case, as circumstances may require. Elmer’s Forms 315. This we are persuaded is the true construction of the statute, and the proper practice under it. It accords with and more fully develops the view of Mr. Griffith, already referred to.
It is worthy of notice, in this connection, that in our statutes, in our volumes of reports, or in our books of practice or precedents, there is not to be found the least trace of any direction or form of proceeding to obtain a decree of distribution, or the least intimation of the necessity of any new notice to give the court jurisdiction of the subject matter or of the parties interested in the estate. "When we regard the length of time that the law has been upon the statute book, and the frequent occurrence of such decrees in practice, the omission is significant.
This view of the statute, and the proper practice under it, *509 is strengthened by the well settled practice in analogous cases both at law and in equity.
It must bo borne in mind that, though the decree for distribution is a judicial determination of the rights of parties, the proceeding to obtain it is not in the nature of a suit between party and party, in which one seeks to recover a right withheld by the other. There is no actor et reus, plaintiff and defendant in the proceeding. It is analogous in its character to a proceeding in admiralty or other proceeding in rem, in which a decision between the parties before the court settles the rights of all parties to the property in question. Scott v. Shearman, 2 Bl. Rep. 979; Ekins v. Smith, Raym. 336; 13 Vin. Ab. 95, Evidence A, b. 22; Gelston v. Hoyt, 13 Johns. R. 579; Geyer v. Aguilar, 7 D. & E. 796; Loring v. Steineman, 1 Metc. 208.
“ It may be admitted as a general principle,” says Chancellor Kent, “ that the sentence of a competent court binds only parties and privies, and does not bind strangers who have no interest in the suit, and who could not be admitted to agitate the case nor to bring an appeal.” Gelston v. Hoyt, 13 Johns. R. 579.
But all parties interested in the estate of the intestate are interested in the decree of distribution. They will be admitted at any stage of the cause to agitate the matters in controversy. They are entitled to appeal. They may bring suit upon the decree, if in their favor. The administrator is bound by it. Upon what possible ground can it then be maintained, that if the decree is against them, it is void as to them because they are not parties ?
On the settlement of an administrator’s account there is a fund in court, or in the hands of an officer under the control of the court, which is to be disposed of under its direction. It is a question between the next of kin. They alone are interested in having it decided. The administrator, as such, has no interest in the question. He is simply to obey the order of the court, and to act as its agent in carrying the *510 decree into effect. He is a trustee acting under the sanction and by the authority of the court.
In proceedings in partition, where the land is ordered to be sold, the money arising from the sale is ordered by the court to be paid by the commissioners to the parties interested in the real estate so. sold, their guardians or legal representatives, in proportion to their respective rights in the same. This is virtually a decree for distribution. There has been a question under the act whether the court would make the order specific, directing to whom the money should be paid, or whether the order should be general, leaving the responsibility of ascertaining the rights of the parties to the commissioners. But where the order is specific, as it .usually is, it has never been doubted that the order was conclusive, and that the commissioners were protected by the order, although the court should err in its decision, and the party really entitled to receive the money should not be before the court. The court adopts such mode- of ascertaining the rights of those interested as it deems proper. The statutory notice of application for partition is constructive notice to the world of all that the court may lawfully do- in the course of proceeding under it.
The same course is adopted in regard to the disposition of funds paid into the Court of Chancery in the progress of suits in equity. Its most frequ-ent application is found in the disposition of surplus moneys arising from the sale of mortgaged premises. The disposition of the surplus is no part of the object of the original suit. Yet, as the fund in the course of the proceeding comes under the control of the court, and into the hands of its officer, the court disposes of the fund as a part of the proceeding in the cause. Ho new bill or subpoena for that purpose is necessary, and if a bill is filed the court will not allow costs on the ground that it is an unnecessary expense. De La Vergne v. Evertson, 1 Paige 183.
The same principle applies to a decree of the court of equity for the settlement of an estate and the recovery of a distributive share. In Delany v. Noble, Adm'r of Maher et *511 al., 2 Green's Ch. R. 441, a bill was filed by one of the next of kin of an intestate against the administrator for an account and for the distributive share of the estate. Chancellor Vroom, in pronouncing his opinion upon the final hearing, said: “ The testimony in this case is not quite as satisfactory as I could have wished in order to found a decree that may not only be a shield to the administrator, and effectually protect him against the claimants, but be just as to the next of kin. There should be no reasonable doubt as to the right of the complainant before the money is paid over; for a mistake once made can never be rectified.”
We are satisfied that under our Orphans Court system a binding decree for distribution may be made after a decree for settlement of an administrator’s account without any further or other notice than that prescribed by the statute for the settlement of the account. That the statutory notice is constructive notice to all parties interested in the account, who thereupon become parties to the proceeding, and are bound not only by the settlement of the account, but also by the decree for distribution. Such has undoubtedly been the practice of the Orphans Court in many of the counties of the state for a series of years. It is difficult, upon any other theory, to conceive' how, in case of the removal of a party from the state, and his absence for a long term of years, a valid decree of distribution can ever bo made. A notice prescribed by statute may operate as a constructive notice to all parties in interest. But in the absence of statutory provision, what notice can operate constructively upon a party long absent, and who is presumed to be dead, or upon the representatives of such party ? To determine who must have notice, if actual notice is required, involves necessarily an inquiry into the merits of the case, and a determination by the courts as to who are entitled to a distributive share, and a consequent decision upon all the questions of law and fact involved in the controversy.
But it by no means follows that an Orphans Court may make a valid decree of distribution without hearing or evi *512 ■dence. On the contrary, all the authorities contemplate ■that the decree should be made at the instance of the administrator or .of some party interested; that it should be upon hearing and upon full inquiry into the rights of the parties. ■If the decree be made upon the application of the administrator himself, without the presence of any party in interest and without notice to such parties — if there be no proof of the facts upon which the decree of distribution rests, it may well be doubted whether a decree would be sufficient to protect the administrator. Such proceeding would be in violation of every principle of justice, and would afford strong presumption that the decree was fraudulently obtained. Loring v. Steineman, 1 Metc. 204.
It is a fair presumption that the decree of distribution in ■this case was made, as it was alleged upon the argument in point of fact to have been made, at the instance of the next .of kin of the intestate, in whose favor the decree operates. Jt was made after hearing and an investigation of the facts upon which the decree was based.
The evidence is not before the court, but the decree recites that it appeared to the court that the intestate left two sons; that one died leaving three children, who are the distributees •named in the decree; that the other son left the state over twenty-five years before the death of his father; that he died many years since -leaving no issue. Now, upon the facts •.thus disclosed, what possible necessity could there be in giving notice through the public papers for a month or six months ? All the parties in interest were before the court. .The administrator it is admitted was present. Whether he appeared voluntarily, or upon notice, or upon formal citation, does not appear, nor is it material. Hot only up>on the evidence before the court was any notice unnecessary, but upon the facts since disclosed it is morally certain that the notice would never have reached the party in interest. It appears that the son of the intestate, who was proved to have died childless, left the state more than twenty-five years before the death of the intestate, and that the only child he *513 then had soon after died. The allegation is, that he subsequently had other children, who are now claiming a share of the estate, and upon whose application the decree of distribution was set aside. They had no relatives or friends in Flew Jersey, and no intercourse with persons in this state. They reside in Illinois. They had no knowledge of the decree for final settlement, none of the death of their ancestor until months after the decree of the distribution, when the fact of his death was ascertained through a letter to the postmaster near the place of his former residence. There seems to have been a proper degree of care taken on the part of the court in investigating the facts, nor does there seem to be the least ground for suspicion of fraud or collusion.
Under these circumstances, the order of the Orphans Court setting aside the decree of distribution is clearly illegal. The decree was itself legal and in accordance with the facts established in evidence before the court at the time it was made. The administrator was bound to obey it. His refusal to pay over the estate in compliance with the order would have been a breach of his duty, and subjected him to an action upon the administrator’s bond or to prosecution before the Orphans Court. Nix. Dig. 256, § 11,12, 563, § 65.
In obedience to the decree of the court, the administrator paid over the entire balance in his hands to three of the grandchildren of the intestate, and who are conceded to be a part of his next of kin. After the money had been paid over, and after the time for appealing had expired, and several terms after the making of the decree, the Orphans Court set aside their own decree as null and void, and thus expose the administrator to the liability of paying the money a second time.
It has been assumed, in considering the case, that the evidence upon which the claim of the children of Robert Zule to a part of the estate of their grandfather is founded is satisfactory. It is however at best but presumptive evidence, and that not of the most satisfactory character. The proof that the intestate was ever lawfully married to the mother of *514 ■his two sons is of the very lightest, character. There is no proof of their cohabitation — none of the fact of their marriage. He came to America in early life, leaving his alleged wife and two sons in Europe. The sons subsequently came to America, but the mother never did.
It may be true that neither the first nor the second set of claimants are the real next of kin of the intestate — that the parties actually entitled are yet undiscovered. But this will not authorize the Orphans Court, upon every new ray of light that may be received, to set aside their own decree lawfully made, and compel the administrator to pay the estate over again to every new claimant. It is the duty of the court, before the decree of distribution is made, to see that the case is clearly proved. If there be reasonable room 'for doubt as to the rights of the parties the decree should be denied.. When once made, and not appealed from, it operates as an effectual shield to the administrator, and protects him against all other claimants. If a party entitled to a distributive share is by the decree deprived of his rights without actual notice and without a hearing, his only remedy is against the distributees who have received the estate. David v. Frowd, 1 Mylne & Keen 200; Sawyer v. Birchmore, 1 Keen 392; S. C. on appeal, 2 Mylne & C. 611; Hurt v. Hurt, 6 Richardson’s Eq. 114.
The order of the Orphans Court setting aside the decree of distribution is reversed, and the decree of distribution declared to be legal, valid, and effectual.
Whelpley, Chief Justice, concurred.