In re estate of James Eakin.

IN THE MATTER OF THE ESTATE OF JAMES EAKIN, deceased.*

1. In the settlement of estates by executors, neither the Orphans Court, nor the Prerogative Court, can make an order of distribution.

2. The order of distribution is not made by any authority or power inherent in the court, and the statute authorizes such order in cases of intestacy.

3. The Ordinary, in England, never had the power of making an order of distribution where there was a will.

Two of the executors of James Eakin, deceased, together filed their account in the Prerogative Court, showing a balance in their hands of $10,665.10. The other executor filed his separate account, showing a balance in his hands of $43,-194.82. The two executors took a rule against their co-executor to show cause why he should not pay over to them so much of the balance in his hands as would, added to the balance in their hands, make the full amount in their hands at least two thirds of the aggregate balance, to be invested under the order of this court, or otherwise, pursuant to the trusts reposed in the executors, by the will. The cause was heard upon the argument of the rule.

*NOTE.—The reporter is indebted to Gov. Vroom for a copy of this opinion, delivered at February Term, 1858, but never reported. It settles an important question not before decided in this state, and, therefore, though greatly out of its chronological order, it is published here.

---

In re estate of James Eakin.

---

*Mr. J. C. Ten Eyck* and *Mr. Browning*, for the rule.

*Mr. A. L. Eakin* and *Mr. P. D. Vroom*, contra.

WILLIAMSON, Ordinary.

After the settlement by the executors of their accounts in this court, the following rule was taken: "The separate account of Alexander R. Shreve and Zachariah Read, two of the executors of said testator having been settled, by which it appears that there is a balance in the hands of the said two executors to the amount of $10,665.10, and the separate account of Alphonso L. Eakin, one of the executors of said testator, having been also settled, by which it appears there is a balance in the hands of said executor, to the amount of $43,194.82; it is therefore ordered, on motion of John C. Ten Eyck, esq., proctor of said two executors, Alexander R. Shreve and Zachariah Read, that the said Alphonso L. Eakin, executor as aforesaid, do show cause, before this court, at ten o'clock in the forenoon of the third Tuesday of November next, why so much of said balance in his hands as aforesaid, shall not be paid, or handed over by him to said Alexander and Zachariah, as will, being added to the said balance in their hands, as aforesaid, make the full amount in their hands, at least two thirds of the aggregate balance aforesaid, to be invested under the order of this court, or otherwise, in execution of the trusts reposed in said Alexander R. Shreve, Zachariah Read, and Alphonso L. Eakin, by the will of said testator. And it is further ordered, that either party have leave to take affidavits, on notice, of themselves and witnesses, to be read on the final argument of this rule. Dated October 30th, A. D. 1857."

Counsel have been heard on both sides, on a motion to make this rule absolute. As it was admitted on the argument, that the success of the motion must depend upon the power of the Prerogative Court to make an order or decree of distribution, I shall confine myself to that question, as my view of it necessarily disposes of the motion before the

court. On the argument I asked the question if there was such a thing as an order of distribution, in the settlement of estates by executors. It struck me as a novelty at the moment, and as being entirely opposed to all my recollections of the history of the law in the settlement of estates.

In the case of *intestacy*, the law administers and disposes of the estate. After the debts are paid the next of kin are entitled to the residuary estate. Upon looking into the history of the law upon the subject, we shall see how it became a matter of necessity, in cases of intestacy, to make an order of distribution. But as to the settlement of estates by executors under a will, all that executors have to do is to execute the will of the testator. The rights of legatees under the will, do not depend on a decree of the court. It is true, the court settles what amount of assets are in the hands of the executors, out of which the legacies are to be paid; but a legatee is not obliged to wait for such a settlement before he can maintain a suit for his legacy. One of the propositions of the counsel, who argued for the rule, was that no suit could be brought for a legacy until the court made a decree of distribution. This certainly is a mistake. The cases cited do not sustain the position. *The Ordinary* v. *Smith's Ex'rs*, 3 *Green's R.* 94, and *Wier's Adm'rs* v. *Lum*, 2 *South.* 823, were cases of intestacy. Williams, *on Executors, vol.* 2, *p.* 905, remarks: "The office of an administrator, as far as it concerns the collecting of the effects, the making of an inventory, and the payment of debts, is altogether the same as that of an executor; but as there is no will, except the administration be *cum testamento annexo*, to direct the subsequent disposition of the property, at this point they separate, and must pursue different courses." Why do they separate? Because the will of the testator is to govern as to the disposition of the estate in one case, while the law regulates it in the other. The will directs the executors as to the subsequent disposition of the property; and it is because there is no such guide, that the court directs the administrators in case of intestacy. In legislating upon the subject,

the law making power have seen fit, in cases of intestacy, to impose upon the court the duty of ascertaining who are entitled, as next of kin, to the residuary estate, and to order distribution accordingly. But they have imposed no such duty in the case of executors. The next of kin founds his suit upon the order of the court. The foundation upon which the legatees rest, is the will of the testator.

The order of distribution is not made by any authority or power inherent in the court. We shall see that the court attempted to exercise such a power in vain; and that it was in consequence of such failure that the statute was passed, conferring the authority. It was insisted that the Ordinary here had the same power and authority in the settlement of estates, that the Ordinary, in England, formerly had. Admitting this to be so, it certainly cannot be shown that the Ordinary ever exercised the power of making a distribution in estates where there was a will. It would be impossible, in many cases, to exercise the power. It necessarily involves the right to settle all disputes arising upon the construction of a will, and makes the court, where the will is proved, a court of construction. This proposition being admitted, then it follows that all our orphans courts possess the same power. This certainly was never dreamed of. If it can be shown that the power is not inherent in the court, but is derived from the statute, then it becomes a mere question as to whether there is any statute covering the case.

After the crown had invested the prelates of the church with that branch of its own prerogative, the control over the transitory goods of the deceased, on the ground that none was more fit to have such control than the Ordinary, who all his life had the care and charge of his soul, such flagrant abuses grew up, that the legislature passed the statute of Edward III, which was the origin of the office of administrator. This statute compelled the Ordinaries to depute "the next and most lawful friends of the dead person intestate to administer his goods." After the Ordinary was di-

vested, by this statute, of his authority of administering, himself, the intestate's effects, the spiritual court attempted to enforce distribution, and took bonds of the administrator for that purpose. Then the temporal courts interfered, and declared such bonds to be void in law, on the ground that, by the grant of administration, the ecclesiastical authority was executed, and ought to interfere no farther. *Hughes* v. *Hughes*, 1 *Lev.* 233. Prohibition on a suit in the Ecclesiastical Court, for obliging an administrator to a distribution. And upon long and solemn arguments, and hearing of civilians at large, it was resolved: That the Ecclesiastical Court could not oblige an administrator to a distribution, and that their bonds, taken to that intent, are void. And, also, *Slawney's case, Hobart* 83. The result of these decisions was to give the administrator the residue of the intestate's effects, after paying off the debts and funeral expenses. This continued abuse gave rise to the statute of distribution. 22 and 23 *Car.* 2, *ch.* 10. This statute compels the administrator to give bond to the Ordinary. A part of the condition of the bond is, that "all the rest and residue of the said goods, chattels, and credits which shall be found remaining upon the said administrator's account, the same being first examined and allowed of by the judge or judges for the time being of the said court, shall deliver and pay unto such person or persons respectively, as the said judge or judges by his or their decree or sentence, pursuant to the true intent and meaning of this act, shall limit and appoint." The Master of the Rolls, in 2 *P. Wms.* 441, says: "The occasion of making the statute of distribution, was to put an end to the long contest which had been between the temporal and spiritual courts, for when the spiritual courts ordered any distribution, or bond to be given by the administrator for that purpose, the temporal courts sent a prohibition, being of opinion that the administrator had a right to all, and that the spiritual court could not break into that right; and so this statute was made in favor of the practice of the

2 s *

spiritual court, which proceeded to order distribution as often as the common law courts did not prohibit them."

This statute was passed, then, because the court had not the power to decree distribution. But it is evident that it had nothing to do with the office of executor. Its object was to correct an existing abuse, which was that the administrator, instead of distributing the residuary estate among the next of kin, appropriated it all to himself. No such abuse did or could exist in reference to executors, and there was therefore, no necessity for such a statute in case of testamentary estates. It cannot be pretended that, prior to this statute, the Ordinary ever attempted to control executors in the distribution of estates; for, it is stated, by Holt, Chief Justice, in *Petit* v. *Smith*, 1 *P. Wms.* 6, as the ground of the decisions which induced the passage of the statute of 22 and 23 *Car.* 2, that the administrator had all the power of an executor, and being in the nature of an executor, it was adjudged that he was not compellable to make distribution.

The Ordinary, in England, never had, and this court never has exercised, the power, and I think it is very clear never possessed it, of making an order of distribution where there is a will. I do not see how it can be done. The statute certainly has no application to executors, and its language is such that it cannot be applied to them. It declares, (*Nix. Dig.* 257, § 12,) "that it shall and may be lawful to and for the judges of the Orphans Court, of the respective counties of this state, after such administrators shall have legally accounted for and touching the goods, chattels, and credits of the person so deceased, to order a just and equal distribution of what shall remain clear after debts, funeral charges, and just expenses of every sort, first allowed and deducted, among the wife and children," &c. And then the statute gives to the distributees their remedy. The statute is not only confined to administrators in its language, but its provisions are not applicable to executors. It applies necessarily, by its very terms, to estates of intestates only.

The executor having settled his accounts in the Preroga-

In re estate of James Eakin.

tive or Orphans Court, neither court has any farther control over him, or over his accounts, except such as is expressly conferred by the statute. If there are trusts created by the will, the proper execution of which requires a distribution of the assets among the executors; or, if there are reasons extrinsic the will which make it proper that the funds should be taken out of the hands of one, and committed into those of other executors; or, if there are equities to be adjusted between the executors; relief must be sought in some other tribunal. The testator has, by his will, taken away from the court the administration of his estate, and given it to the persons appointed to execute his will. The statute may give to the court power, but when no such power has been conferred by statute, none can be exercised.

If the views I have expressed are correct, this court has no control over the matters embraced in the rule, and it must be discharged.