Joseph married Isabella in New York in 1907. They lived together as husband and wife until he was killed on the railroad in 1927. Isabella and two grown children survived. Charging the railroad company with responsibility for the death of of the husband and father, Isabella settled for $5,000, and the surrogate of Middlesex county granted letters of general administration to her, that she might make the settlement. Four years later, Rosa Lanza, who resides in Italy, whom Joseph married in Italy in 1902, put in an appearance to claim the fund and petitioned the surrogate to compel Isabella, administratrix, to account. Obedient to a citation, Isabella filed an account in the orphans court charging herself with the $5,000 and praying allowances for funeral expenses, $755.84, for one-third share of the fund paid to her son, who had become of age, and for $870.16 which she had *Page 260 
retained as part of her own share, whereupon Rosa Lanza filed exceptions to the discharges except the funeral expenses. The orphans court sustained the exceptions, ordered the account to be amended accordingly, and as amended that it be allowed, "and that there is a balance of $4,244.16 remaining in the hands of the accountant to be disposed of according to law." Subsequently, by a decree which recites that Rosa Lanza presented her petition demanding that the entire estate and personal property of Joseph be paid over to her as his widow and only next of kin, and after testimony taken and argument had, the orphans court "ordered, adjudged and decreed that the said Rosa Lanza Capraro is the lawful widow of Joseph Capraro, deceased, and that the said Rosa Lanza Capraro, as the lawful widow and only next of kin, is entitled to the whole of said estate amounting to the sum of $4,244.16, and that the said Isabella Capraro, administratrix, is hereby ordered and directed to forthwith turn over and pay to the said Rosa Lanza Capraro, or her solicitor, the said sum of $4,244.16." Isabella appeals from the decree of distribution.
The testimony before the orphans court disclosed marriage ceremonies, civil and religious, in Italy in 1902, between Joseph and Rosa Lanza, and that they lived together for a year, when he came to America, to New York, where he later met Isabella. Although they came from the same small town in the old country Isabella claimed not to have known him there, nor Rosa Lanza, and had never heard of the marriage between Joseph and Rosa Lanza. The judge of the orphans court concluded that Rosa Lanza was the lawful wife, and because, as he stated, "the legal presumption arises that a marriage status once formed continues until the contrary is proven," that she is the lawful widow. He seemed not to have considered the primary and stronger presumption of the legality of the marriage between Joseph and Isabella, arising from their ceremonial marriage, the family and their matrimonial relations for twenty years; nor the burden on Rosa Lanza to overthrow this presumption by proof of the validity of the prior marriage, and also by evidence negativing *Page 261 
every reasonable possibility of its invalidity as well as every reasonable possibility that it did not subsist at the time of the second marriage. Sparks v. Ross, 72 N.J. Eq. 762; 79 N.J. Eq. 99; Schaffer v. Krestovnikow, 88 N.J. Eq. 192; Schuler v.Schuler, 114 N.J. Eq. 220. There was no proof before the orphans court that Joseph and Rosa Lanza had not been divorced. Proof of that was furnished on the appeal by Rosa Lanza's deposition that she had not instituted divorce proceedings and had heard of none brought by Joseph against her. There was, however, no proof below, nor on appeal, that in 1902 Joseph and Rosa Lanza were free to marry. It has been held that the presumption of the legality of a second marriage is not overcome by proof of a prior ceremonial marriage, unless it should also be proven affirmatively that at the time of prior marriage the parties were free from disabilities against a lawful marriage.United States v. Green, 98 Fed. Rep. 63. Whether there was error in the conclusion need not be passed upon, for we are of the view that the orphans court had no jurisdiction to order the distribution of the fund.
The fund recovered under the Death act is no part of the decedent's estate. It is held by the administrator in trust for the exclusive benefit of the widow, surviving husband and next of kin of the decedent, to be apportioned among them as they would take of the decedent's estate under the statute of distribution.Gottlieb v. North Jersey Street Railway Co., 72 N.J. Law 480.
Inasmuch as the Death act directs the fund to be paid to an administrator "who has given bond as required by law," and the Orphans Court act [section 46] prescribes the form of the bond to be given by administrators, with conditions to file with the surrogate a true and perfect inventory, to well and truly administer according to law, to file a just and true account to be allowed by the orphans court, and the residue of the estate "shall deliver and pay unto such person or persons, respectively, as is, are or shall, by law, be entitled to receive the same," it is necessarily implied that the orphans court has jurisdiction of the administration of the fund, as it has over executors' *Page 262 
and administrators' accounts of decedents' estates under the statute. To deny this orderly course of administering the fund would mean that there could never be a breach of the quoted condition of the bond. That judicial function, however, is concluded when the administrator's account is allowed and approved. Ordinary v. Barcalow, 36 N.J. Law 15.
In stating the account for allowance and approval, the court, of course, correctly sustained the exceptions to the allowances sought by the accountant for the share paid to the son and the part appropriated by the widow, for distribution of the fund under the statute formed no part of the accounting. The only proper items of an administrator's account are the assets of and the outlays for the estate; it is upon these that the balance is struck and charged against the administrator. Weyman v.Thompson, 52 N.J. Eq. 263. And the orphans court's order approving the account and charging the accountant with the balance, $4,244.16, was the appropriate final adjudication of the administration; its second order, distributing the fund, was without authority in law.
Jurisdiction to order distribution is a judicial function separate and distinct from the supervisory powers over administrators' accounts. Distribution is not made by any authority or power inherent in the orphans court. In re Estateof James Eakin, 20 N.J. Eq. 481. It is a power bestowed upon probate courts from the earliest period only by express legislative grant. In the cited case, Chancellor Williamson relates that when the office of administrator was created by the statute of Edward III and the ordinary was compelled to appoint the next friend of the intestate to administer his goods, it required the statute of 22 and 23 Car. 2 ch 10, to endow the ordinary with authority to compel administrators to make distribution. The authority of our ordinaries, colonial and state, over administrators, their accounts and distributions, had its origin in these statutes and was the same as that exercised by the English ordinary.
When the orphans court was created by the act of December *Page 263 
16th, 1784 (Pat. Laws 59), and powers of the ordinaries were divided with that court, it was authorized to hear and determine all controversies respecting the existence of wills, the fairness of inventories, the right of administration and guardianship and the allowance of accounts of administrators, executors, guardians and trustees, practically in the same language as section 2 of the present Orphans Court act (Comp. Stat. p. 3813), but no power of distribution was granted. That came eleven years later in an act passed March 2d 1795 (Pat. Laws 153), and was confined to distribution of intestates' estates.
Though the orphans court originally was given jurisdiction over executors and their accounts, it required an enabling act in 1872, now section 173 of the Orphans Court act, to vest it with power to order distribution of estates of testators.
In Ordinary v. Smith's Ex'rs, 15 N.J. Law 92, Chief-Justice Hornblower remarked that "the administrator having faithfully administered on the estate, and settled his accounts in the orphans court, may fold his arms in security, until the persons claiming to be the next of kin, have obtained a decree of the proper tribunal, establishing their title, ascertaining the amount due to them respectively."
In Ordinary v. Barcalow, supra, Chief-Justice Beasley held that an executor must settle his account in the orphans court, and failure to do so was a breach of his bond, notwithstanding, and he held, that the orphans court had not the power to decree distribution. That was before the act of 1872 conferring the right.
In Exton v. Zule, 14 N.J. Eq. 501, it was held that a decree for distribution of an intestate's estate, although a separate adjudication, was nevertheless ancillary to a decree settling the administrator's account to the extent that notice of the settlement was notice of the application for the decree of distribution, but in Adams v. Adams, 46 N.J. Eq. 298, the court of errors and appeals held that a decree for distribution of a testator's estate was not a natural sequence of the executor's settlement of the account and that notice of the *Page 264 
application for distribution was essential to the decree of distribution. In the first named case the individuality of the decree of settlement and the order for distribution was recognized; in the second it was emphasized.
The orphans court, a tribunal of general jurisdiction with powers limited to matters committed to it by the statute (Den,ex dem. Obert v. Hammel, 18 N.J. Law 73; In re Fulper Estate,99 N.J. Eq. 293), fully exercised and exhausted its jurisdiction implied in the Death act. The power to settle the account did not carry with it the power to order distribution of the fund. That was a duty imposed by the statute upon the administrator, not upon the court, and a determination by the orphans court would not protect the administrator, nor bind the claimants. For his protection or for the ascertainment of their rights they must pursue the remedies provided by law, as in other matters of trust. It may be that the next of kin may recover their shares from the administrator at law, as was attempted in Wellbrook v.Ocean County Trust Co., 9 N.J. Mis. R. 273, but it is thought that the relief is to be had in chancery only. Frey v.Demarest, 16 N.J. Eq. 236.
We have here the anomalous situation of a fund representing the loss to Isabella and her children, claimed by Rosa Lanza whose damages, if any, could not have been contemplated in the settlement, and who delayed her notice of claim until long after the administratrix paid out part of the fund, as she was in duty bound under the statute. It may be chancery can adjust the equities.
The decree of the orphans court to distribute the funds is set aside. *Page 265