JACOB N. HILL, appellant,

v.

JOHN D. BLOOM, executor &c., respondent.

1. A testator directed, as to the distribution of his estate, that if there should be due to his estate, from any of his legatees, "obligations of any kind or evidences of debt of any kind," then "such obligations" should be first deducted from the debtor's share.—*Held*, that promissory notes and receipts of one of the distributees, for advances of money by the testator to him, were to be so deducted.

2. The orphans court, in fixing the decree of distribution by executors, has power to construe the will, so far as necessary to determine to whom the distribution or payment is to be made.

Appeal from decree of Sussex orphans court.

*Messrs. Roe & Shepherd*, for appellant.

*Mr. C. D. Thompson*, for respondent.

THE ORDINARY.

This is an appeal from an order of distribution made by the Sussex orphans court, October 21st, 1884, under the will of Nehemiah Hill, deceased. By the seventh section of the will, the testator ordered that if, at the time of the distribution of his estate, or any part thereof, there should be due to his estate, from any of his legatees, "obligations of any kind or evidences of debt of any kind," then "such obligation" should be first deducted from his or her share of the estate, before payment of such share or legacy. He gave a share of his estate to his daughter Mary Ann Newbaker; another to the heirs of his daughter Magdalena Emmans; another to his son, Jacob N. Hill, the appellant; another to his daughter Sarah Jane Bowers; and another to his daughter Susan Ellen Bloom. At the time of his death, he held two promissory notes and four receipts given to him by the appellant for money advanced by him to the

Hill *v.* Bloom.

latter.    They amounted, with interest, to $3,206.12.    The executors filed two accounts.    The first was passed August 8th, 1882.    The balance thereon to be distributed was $3,692.60. That balance was distributed by an order made August 22d, 1882, which adjudged that Sarah Jane Bowers owed the estate, at the date of the order, $3,746.60 on notes and obligations given by her to the testator in his lifetime, and that there was due to the estate from the appellant, at that date, $3,431.98 on notes and obligations given by him to the testator in his lifetime, and that there was nothing due the estate from any of the others to whom shares were given.    The order distributed the balance among those other persons.    The final account was passed July 22d, 1884.    The balance thereon for distribution was $8,093.90, including the balance of the former account.    The order of distribution upon the settlement of the final account was made October 21st, 1884.    It recited that there was at that date due to the estate from Sarah Jane Bowers, $4,013.91 ($2,061.72 of principal and $1,952.19 of interest), and from the appellant, $3,658.77 ($1,695 of principal and $1,963.77 of interest), and ordered and adjudged that those sums respectively be deducted from their respective shares.    Also, that there was no proof that there existed any indebtedness of any kind to the estate from the other persons entitled to shares, and that it appeared that the balance upon the account of August, 1882, had been distributed according to the provisions and directions of the will, so that there remained in the hands of the executor, to be distributed, the sum of $4,401.30.    It thereupon ordered that the costs of the order and a counsel fee be paid out of that residue, and that the remainder, $4,348.36, be distributed and paid by the executor as follows: $1,449.45 to Mary Ann Newbaker, the like sum to Susan E. Bloom, and the like sum to Joseph R. Emmans, Nehemiah H. Emmans and Uriah Emmans, children of Magdalena Emmans, deceased, in equal shares.    From this latter order, the appeal was taken.

The appellant insists that the court erred in charging against him the amount of the notes and receipts given by him to the testator in his lifetime.    According to the evidence, he has ad-

mitted that he received from his father the money mentioned in those instruments, and that the money was advanced to him by his father. It appears that it was advanced to him on account of his share of his father's estate. John R. Reamer testifies that, after the testator's death, the appellant said to him that " he had had his share of his father's estate and a little bit more, but, if there was anything more to get, he was going to have some more." The appellant's counsel argues that by the terms of the seventh section of the will, only obligations according to the technical signification of the term are to be deducted from the shares. The language of the section is :

" I do further order that if, at the time of the distribution of said estate or any part thereof, there shall be due to my estate, from any of the said legatees, obligations of any kind or evidences of debt of any kind, then such obligation shall be first deducted from his or her share of said estate before payment shall be made of such share or legacy."

Obviously, that construction would be too narrow. It evidently would not be in accordance with the intention of the testator. By the term " obligations " he meant to include notes and all instruments by which the maker thereof binds himself to pay money. And by the term " evidences of debt " he meant to embrace instruments not obligations or promises to pay, and which might not be even acknowledgments of indebtedness, such, for example, as receipts for advances of money. And when in the second clause of the sentence he used the word " obligation," he intended to embrace therein all those things mentioned in the first clause; namely, obligations of any kind and evidences of debt of any kind. He meant, by means of this provision, to secure to his children an equal division of his estate, taking into account and charging against them any advances which he might have made to them, for which he held their obligations or written promises to pay, or of which he held other written evidence. As before stated, he held, at the time of his death, two promissory notes given to him by the appellant for advances made by him to the latter, and four other instruments of writing, signed and given to him by the appellant, acknowledging the receipt by the latter from him of different sums of money. Those sums were

also advances made by the testator to the appellant, and those receipts were given, taken and held as evidence of those advances. The testator always spoke of them as " Jacob's notes." They all merely acknowledged the receipt from the testator of the money mentioned therein, without stating on what account or for what the money was paid or received. One of them (for $500) contains a statement of the mode in which the money mentioned therein was transmitted, in the words " what I sent to you by a check." That receipt is in the handwriting of the testator and signed by the appellant.

The words above quoted were written by the testator, and by them he intended to identify that particular advance. The testator never owed the appellant any money. The former lived in this state, and the latter lived in Michigan during all the time in which the advances were made. When, since the testator's death, the appellant was asked why he did not send notes to his father, instead of receipts, he replied that that was his business. He also said that the notes and receipts (he had then examined them) were all right; that he had received every cent of the money for those papers, and that his father was very kind, and always sent him money when he wanted it. In *Havens* v. *Thompson, 11 C. E. Gr. 383,* a receipt given by a son to his father for a sum of money " in full, in lieu of dowry," was held, under the evidence, to be an agreement by which the son, in consideration of the money so paid to him by his father, agreed with the latter that he would make no claim to a share of his father's estate, should the latter die intestate, but would be debarred therefrom by that instrument made upon what was a satisfactory compensating consideration. There is no error in the adjudication complained of in this case.

The appellant's counsel insists that the orphans court had no jurisdiction to make the decree of distribution, because, in order to do so, it was necessary for it to construe the will, and he insists that that court had no authority to construe the instrument. The objection is not well founded. The one hundred and fifty-first section of the orphans court act (*Rev. p. 785*) provides that when an account shall have been filed by an executor or an

administrator *cum testamento annexo*, exhibiting a balance in hand, it shall be lawful for the court, upon the application of any party in interest, to adjust, order and make just distribution in accordance with the directions and provisions of the last will and testament in each case, of what shall remain after all debts and expenses shall have been allowed and deducted. The power to construe the will so far as necessary to determine to whom the distribution or payment is to be made, is obviously a necessary incident to the power given by that section.

It is also urged, on behalf of the appellant, that if the orphans court had authority to make the deduction, and it was right that the deduction should be made, the court ought to have treated the money due to the estate from Sarah Jane Bowers and the appellant respectively as part of the assets of the estate, for the purpose of ascertaining the shares.

It appears, by the account of 1882, that those debts were included in the inventory, and that allowance therefor was obtained in that account, on the ground that they had not been collected, and were, in fact, uncollectible. The decree appealed from will be affirmed, with costs.