DANIEL H. DUNHAM, administrator *cum testamento annexo* of the estate of Nancy W. Halsted, deceased,

*v.*

ALBERT R. MARSH.

1. Where, in his exceptions to the account of an administrator *cum testamento annexo*, the exceptant alleges that he is next of kin of the testatrix, and the administrator moves to strike out the exceptions without allowing opportunity to substantiate the allegation of kinship, the allegation will be taken, for the purpose of disposing of the motion, as true.

2. An orphans court may determine any question incidentally and necessarily involved in the due exercise of its jurisdiction, though the determination of that question, directly presented, would not be within its jurisdiction; but the binding effect of its conclusion upon the question will not extend beyond the end for which the conclusion is necessarily reached.

On appeal from an order of the orphans court of Hudson county, denying a motion to strike out exceptions to the account of an administrator *cum testamento annexo*.

Nancy W. Halsted, of the township of Kearny, in the county of Hudson, died in May, 1891, leaving a will to which there were three codicils. By the will executed January 16th, 1886, after bequeathing sundry legacies, she disposed of her real estate,

Dunham v. Marsh.

devising the portion of it upon which her mansion-house was erected to the Newark Orphans' Asylum, of Newark, and, in addition to such devise, bequeathed to the same institution the furniture and other chattels in, and used in connection with, the mansion-house. By the second codicil to the will, which was executed on the 17th day of May, 1891, she revoked her former gifts to the orphans' asylum and made disposition of that part of her real estate which is situate in the township of Kearny, as follows :

"And I do hereby direct that the entire property whereon I now reside; consisting of about ten acres, more or less, be deeded to the Newark Protestant Orphans' Asylum, of Newark, New Jersey, on the following conditions, viz.: That said corporation use it as a home for orphan children from all parts of the State of New Jersey, said orphans to be trained in some useful trade or profession, the said property to be held and so used by said corporation perpetually; this branch of said organization to be forever known as the Halsted School or Home, as said corporation may elect."

Then, after directing that relatives, visiting her, might occupy her homestead for one year after her death, she proceeded in this language :

"And further, that the residue of my estate be given to the Newark Protestant Orphans' Asylum, provided they accept the above-described property."

On the day which followed the execution of this second codicil, she executed a third codicil, in which, among other things, she provided as follows :

" In case the Newark Protestant Orphans' Asylum, of Newark, New Jersey, fails to accept of the property described in the last-mentioned codicil, then I direct that said property be deeded to the trustees of the Third Presbyterian Church of Newark, New Jersey, to be used at their discretion in the care and education of orphans from all parts of the State of New Jersey.  *  *  *  I also direct that my books, except those disposed of by my will, be given to the trustees of the Third Presbyterian Church of Newark, New Jersey, to dispose of where they will do the most good, in their judgment."

The residue of the estate of the testatrix, disposed of by the second codicil, is claimed to have consisted, among other properties, of household chattels, including the books mentioned in

17

the third codicil, valued, in the administrator's inventory, at $2,409.59.

In accounting, the administrator prays allowance for those household chattels and books at their inventoried price, stating that they have been delivered by him to the Third Presbyterian Church of Newark, "in compliance with the bequest in said will."

Albert R. Marsh has filed written exceptions to the account, which draw in question the amount of the commissions claimed by the administrator, the allowance asked for counsel fees paid by him, the transfer of the personal property above referred to, valued at $2,409.59, to the Third Presbyterian Church of Newark, the failure of the administrator to account for moneys alleged to have been paid to him by an administrator *pendente lite,* and the completeness of the charges made by the administrator against himself, with respect to other properties alleged to have been received by him. In his exceptions he alleges that he is the only next of kin of Mrs. Halsted.

The administrator moved to strike out the exceptions, upon the ground that the exceptant did not appear to be interested in the settlement of the account, and, from an order of the orphans court denying his motion, he has taken this appeal.

*Mr. John A. Miller,* for the appellant.

*Mr. James E. Howell,* for the respondent.

THE ORDINARY.

The statute (*Rev. p. 775 § 125*) provides that any person interested in the settlement of any account of an executor, administrator, guardian or trustee, may appear in person, or by attorney, and make exceptions to such account.

The only question raised by the appellant's motion to strike out the exceptions, is whether the respondent is such an interested person as the statute contemplates.

The exceptions allege that he is the next of kin of the testatrix. The appellant moved to strike out the exceptions, without

Dunham v. Marsh.

demanding the substantiation of this allegation by proof. Such a motion, for its purposes, under the circumstances, must be treated, like a demurrer, as admitting the truth of the allegation touching the respondent's kinship. Such was the effect accorded to a similar motion in *Poulson* v. *National Bank of Frenchtown*, *6 Stew. Eq. 618*.

The question then presented by the appeal is reduced to this, was the next of kin of Mrs. Halsted a person interested in the settlement of the account of the administrator of her estate *cum testamento annexo ?*

As he does not take anything by the will, whatever interest the respondent may have must arise from Mrs. Halsted's intestacy of some portion of her estate. His claim is that her disposition of the residue of her estate, in the second codicil to her will, was conditioned upon the acceptance, by the Newark Protestant Orphans' Asylum, of real estate devised to it, on the condition that it should be used for a home for orphan children perpetually, as in the codicil provided, and that the gift over, in the third codicil, to the Presbyterian church, upon the non-acceptance of the realty on the condition stated, did not carry with it the residuary estate.

That the orphans' asylum did refuse to accept the intended gift upon the condition stated is admitted.

It is observed that the first gifts to the orphans' asylum, in the will, consisted expressly of both real and personal estate, and that the primary gift by the second codicil was described merely as real estate—" the entire property whereon I now reside, consisting of about ten acres, more or less "—and was directed to be " *deeded*," an apt word to signify the transmission of real estate. There is nothing in this language that can justify an implication that the furniture in the mansion-house was to go with this primary gift. It is a gift of pure realty. The gift was upon condition that the property should be devoted to a prescribed purpose. To this gift, if it should be accepted, the testatrix added the further or secondary gift of the residue of her estate, free from any condition as to its use, thereby adding a premium to induce the acceptance of the realty upon the desired condi-

tion.  The former gift of the household furniture of the testatrix was revoked.  Nó new specific legacy of it was made:. Hence it became part of this residue.

In the codicil, by which these gifts were offered, the testatrix failed to make provision for the contingency of a refusal upon the part of the orphans' asylum to accept the property tendered, and consequently, the day after its execution, another codicil was prepared, in which, still intent that her residence property should be devoted to the benefit of orphans, she provided that if the orphans' asylum should fail to accept " the property described' in the last-mentioned codicil" on the condition prescribed, that " said property " was to be " deeded " to the Presbyterian church for use in the care and education of orphans.  In this codicil, also, the word " deeded " is used in manner similar to its use in the former disposition of the realty.  There was no description of the residue in the former codicil, and hence, taking the terms of the last codicil in their literal meaning, the residue does not pass by it.  Besides, the residue consisted, as the administrator's account and the will both show, largely of personalty, for the transmission of which the word " deeded " was not an appropriate term.

But that which furnishes the most conclusive evidence that it was not the intention of the testatrix to give the residue of her estate to the Presbyterian church, is found in the express gift to it of the books of the testatrix, which appear by the account to have been part of her household chattels, expressly bequeathed by the will, but subsequently carried by the second codicil into the residuary estate.  The implication from such a particular gift of part of the residue to the church is, that the remainder of that residue was not intended to be given to it.  The maxim " expressio unius est exclusio alterius " applies.

I think that the testatrix died intestate as to her residuary estate and that the household furniture is included in that residue.

As next of kin, then, the respondent will take property which is chargeable with the payment of the expenses of the administration of the estate, including commissions to the administrator-

and the counsel fees, for which he claims allowance, and he will be entitled to property unaccounted for if the proofs sustain the exception which charges that the administrator has received other properties for which he has failed to account, and he will be entitled to the furniture, which the administrator claims to have delivered as a specific legacy.

It was contended upon the argument that, as the ascertainment of the *status* of the respondent, as a person interested in the settlement of the account, involves the partial construction of the will of Mrs. Halsted, it is not within the power of the orphans court to decide the matter, because that court does not possess jurisdiction except, possibly, in the case provided for by the one hundred and fifty-first section of the Orphans Court act (*Adams* v. *Adams, 1 Dick. Ch. Rep. 298*), to construe wills. The error of this contention becomes manifest when it is remembered that the orphans court is invested with complete and general jurisdiction over the matters which are specially given it in charge by the statute (*Pyatt* v. *Pyatt, 1 Dick. Ch. Rep. 285*), among which is the accounting of executors and administrators. Its action upon an account, duly advertised, is binding upon all persons in interest, and therefore those persons should be heard before the account is allowed. It follows, as a necessary incident to the exercise of this jurisdiction, that the court shall possess the power to determine who the parties in interest are, and, as an incident in the exercise of that power, to solve any question which must necessarily be decided in reaching that end. *Den* v. *Bolton, 7 Halst. 206 ; Johnston* v. *Jones, 8 C. E. Gr. 216 ; Mechanics' National Bank* v. *Barnet Manufacturing Co., 5 Stew. Eq. 239 ; Union Water Co.* v. *Kean, ante p. 111.*

But the binding effect of the court's conclusion upon the question will not extend beyond the end for which the conclusion is necessarily reached.

Upon the decision of the matter now considered, it was necessary for the orphans court to construe the will of Mrs. Halsted so far as was requisite to determine the *status* of the defendant, and when the exceptions are heard it will be necessary for it

Dunham *v.* Marsh.

again to construe the will, to determine whether allowance shall be made the administrator because of his transfer of the furniture to the Presbyterian church as a specific legacy. How far the church will be bound by that construction is not now in question.

The order appealed from will be affirmed, with costs.