GAIL H. HELMER, executrix, &c.,

*v.*

FARNHAM YARDLEY et al., executors, &c.

[Decided March 13th, 1922.]

On appeal from a decree of the prerogative court advised by Vice-Chancellor Griffin, whose opinion is reported in *92 N. J. Eq. 397.*

*Mr. Max M. Stallman,* for the appellant.

*Mr. Albert C. Wall,* for the respondent.

PER CURIAM.

Gail H. Helmer, executrix under the will of George J. Helmer, deceased, petitioned the orphans court of Essex county, praying a decree compelling Yardley and Montague, the executors of Alfred B. Jenkins, deceased, to pay over to her the amount of a legacy which, as she averred, she was entitled to receive from them as the representative of George J. Helmer,

the legatee named in the Jenkins will. A hearing having been had upon the petition, a decree was entered directing the payment of the legacy to the petitioner. The executors of Jenkins thereupon appealed to the prerogative court, with the result that the decree of the orphans court was reversed. The present appeal is taken from the decree of reversal.

Our consideration of the case leads us to the conclusion that the construction put by the orphans court upon the legacy contained in the will of Alfred B. Jenkins, deceased, and which is the subject of the present litigation, is the correct one, and that the decree of the prerogative court, therefore, must be reversed. The grounds upon which our conclusion rests are those expressed in the opinion of Judge Martin, delivered in the orphans court; and this court adopts that opinion as its own.

The opinion of Judge Martin is as follows:

"Alfred B. Jenkins, late of West Orange, died the 29th of December, 1916, leaving a last will and testament which was admitted to probate the 10th of January, 1917. The will was executed on the 11th of June, 1915. The ninth paragraph provides as follows:

" 'Ninth. If I have not already provided for the same during my lifetime and if my friend, Doctor George J. Helmer, now of Nyack, New York, shall succeed in establishing his clinic for advice and treatment of patients under the School of Osteopathy. I give and bequeath to him for his assistance in establishing such clinic the sum of twenty-five thousand dollars. If, however, I have made my contribution to him, or if by the time of the taking effect of this, my will, he has failed to establish the clinic, I direct that this legacy shall lapse, fall into and become a part of my residuary estate.'

"Dr. Helmer, a resident of Nyack, New York, survived the testator and died the 15th of March, 1917, leaving a last will and testament which was admitted to probate by the surrogate's court, county of Rockland, New York, and letters testamentary were issued to petitioner, who qualified and is now acting as executrix.

"The pleadings admit that testator did not make his contribution to the clinic of Dr. Helmer nor provide during his lifetime

for establishing any clinic for the treatment of patients under the School of Osteopathy.

"The issue is whether Dr. Helmer performed the condition precedent prior to the time of the death of testator, December 29th, 1916.

"The parties agreed at the hearing that this provision was not intended as compensation or reward personally to Dr. Helmer for his services rendered. This agreement seems to be proper. Clearly the intention of testator was to give $25,000 to aid the free advice and treatment of patients under the School of Osteopathy. He placed the fund to be paid out under the direction of Dr. Helmer for the benefit of his clinic.

"The facts are not disputed. Dr. Helmer was one of the oldest graduates of the recognized School of Osteopathy and enjoyed a very large and lucrative practice in New York City and was the leading osteopath in the eastern section of the country. He was the professional adviser of and administered osteopathic treatments to testator and members of his family during the five years prior to testator's death. The testator was a close personal friend of Dr. Helmer and no doubt testator greatly admired Dr. Helmer personally and professionally and believed in the school of treatment of human ailments espoused by Dr. Helmer.

"One of the witnesses stated that many years ago, probably about 1907 or 1908, Dr. Helmer spoke of the desirability of personally establishing a clinic for the osteopathic treatment of persons unable to pay, but the idea was abandoned by Dr. Helmer long before he ever knew the testator.

"The followers and adherents of the new School of Osteopathy as a scientific method of treatment of disease generally believed in the plan of benefiting the public by making better known the principles of their school, and to that end to establish a place where patients might be given advice and treatment practically free of cost. The purpose of the osteopathic physicians was supported by the belief that it would greatly enhance the reputation and standing of the School of Osteopathy.

"The Osteopathic Society of New York City, of which Dr. Helmer was a member from the time of its organization until

his death, was the principal society of practitioners of the school in and around New York City. Dr. Helmer appears to have advocated and in fact did frequently speak to members of the society of his conviction that a clinic should be established in New York City for the treatment of the poor.

"In the year 1912 a resolution of the society was passed declaring that the time had arrived when efficient measures should be taken to establish a clinic. The committee was appointed and met from time to time for a period of two years and discussed various measures with a view of establishing a clinic. The natural result was the securing of the active support of the leading osteopathic physician and his friends. It was arranged among the interested osteopaths that they personally should not become members of the board of directors of the New York Osteopathic Clinic. The policy was adopted to promote harmony.

"The first effective step towards organizing a clinic was the selection of a board of prominent citizens.

"In 1914 Dr. Helmer obtained the interest and active co-operation of Mr. William Strother Jones, of the New York stock exchange, and the Rev. Charles J. Eaton, pastor of Madison Avenue Baptist Church. These two friends of Dr. Helmer were the first laymen selected to support the project and their active participation gave great encouragement to those interested in the enterprise. Other osteopaths also invited some of their patients and friends to join the board. Mr. Jones was selected as the president of the board and has since taken a very effective part in all the affairs and progress of the clinic.

"On May 30th, Dr. Helmer invited a large number of osteopathic physicians in and around New York City to visit him at his home at Nyack, New York, and there was discussion of the proposed activities of the clinic.

"On the 13th day of March, 1914, a charitable or membership corporation was organized under the laws of New York known as the 'New York Osteopathic Clinic.' It was stated that the object was to establish a dispensary to conform to the law. That savored too much of medicine but the official title and actual work show it to be the kind of clinic mentioned by testator.

Dr. Helmer and a number of osteopaths made contributions for the purpose of giving it a standing and character sufficiently satisfactory to warrant the legally constituted authorities of the State of New York to permit it to begin its proposed operations, and on the 15th of April, 1914, the state board of charities granted a license to the organization. On the 1st of May, 1914, a lease for the building at 33 East Thirty-second street was entered into, the clinic for patients was opened the 13th of July, 1914, and it has since continuously given advice and treatment to patients under the School of Osteopathy free of charge except where the patient could pay some money but much less than the usual charge of osteopaths.

"Dr. Helmer was a member of the clinical staff and gave his support, co-operation and time and attention to the activities of the institution and personally gave advice and treatment to patients at the clinic until his decline in health prevented him. After the summer of 1916 he sent a substitute to perform his personal work with the patients.

"The money raised for the initial work of the clinic at the time of the incorporation was rapidly disbursed and exhausted during the first year of the existence of the clinic. The finance committee, of which Dr. Helmer was a member, relied to a great extent upon Dr. Helmer to relieve the situation because his practice was recognized to be unusually large amongst the wealthier class of people and therefore it was believed he could raise more money than the rest. During April, May and June, 1915, about the time of the preparation and execution of the will of Alfred B. Jenkins, Dr. Helmer was particularly active in enlisting and obtaining financial assistance for the institution. At a meeting of the Osteopathic Society of New York City, in May, 1915, he secured pledges of financial support and stimulated competition and the interest of his fellow osteopathic physicians by marking up the pledges on a blackboard. He personally pledged the sum of $1,000, which was an example for the others. All of these efforts and activities on Dr. Helmer's part were for and on behalf of the newly-formed and struggling clinic. As a result the temporary difficulties in which the New York Osteopathic Clinic was enmeshed were greatly relieved

and the institution has continued to exist and carry on its work up to the present time.

"This New York Osteopathic Clinic was the only one in which Dr. Helmer was or for many years had been interested. There was no other clinic in or around New York City contemplated, designed, in progress or formation or in existence. There is no evidence of the existence of any other clinic that could have been known to testator.

"Petitioner contends that she has shown by the uncontradicted evidence and the fair inferences to be drawn therefrom that the condition precedent to the validity of the legacy has been fully performed by the incorporation, actual establishment and continuation of the New York Osteopathic Clinic.

"The contention of respondent is that the part performed by Dr. Helmer in the formation of the New York Osteopathic Clinic was merely as one of a number of other osteopathic physicians and their friends and that the enterprise was the product of the joint efforts of the members of the Osteopathic Society of New York City and not the product of the personal efforts of Dr. Helmer. Hence it is argued that Dr. Helmer himself may not be said to have succeeded and that the clinic should not be designated as 'his' clinic.

"Petitioner must show (1) that Dr. Helmer succeeded; (2) in 'establishing' a clinic; (3) that it was 'his' clinic; (4) that the clinic was for the advice and treatment of patients under the School of Osteopathy, and (5) that the establishment was prior to the death of testator.

"There is no controversy that the clinic established was under the School of Osteopathy nor that it was before his death. This eliminates (4) and (5) from the discussion.

"It will be helpful to endeavor to ascertain what the testator means by the word 'establishing.' The word 'establish' in the standard dictionaries is defined in part as follows:

" '1. To make stable, firm.

" '2. To put or fix on a firm basis; settle stably or fixedly; *put in an efficient state or condition.*

" '3. To confirm or strengthen; make more stable or determinate.

"'4. To confirm by affirmation or approval; sanction; uphold.

"'5. To make good; substantiate, show to be valid or *well grounded; cause to be recognized as valid* or legal; cause to be accepted as true *or as worthy of credence.'*

"In its primary sense the meaning is 'to settle or fix firmly.' *2 Words and Phrases (2d series) 323.* Other definitions are 'to put * * * in an efficient state or condition.'

"Hence, one who completes the original enterprise or plan of another or who places it in an efficient state or condition may be said to establish it.

"It is not necessary to discover the original idea or plan, actively and exclusively found and erect an institution based on the plan and place it in a position fully to perform all its functions in order to establish it.

"The absolute and positive fulfillment of the condition to the highest degree, character or extent that may be imposed, is seriously modified by the testator because after stating that if Dr. Helmer succeeds in establishing his clinic then he gives $25,000 to him for his assistance in establishing such clinic. If it must be fully completed then how could it be possible to use money to assist in completing it? This demonstrates the different meanings attached to the word 'establish' adopted by testator, and indicates that Dr. Helmer need not be the sole designer, founder, constructor, supporter and director of the clinic.

"Dr. Helmer in fact was the leader in the early days of the struggle of the adherents of osteopathy for recognition of their school of treatment of disease. He talked of his own clinic, he readily and heartily joined others in the work and in many respects led the efforts in organizing the New York Osteopathic Clinic; he made it stable and firm by his efforts before and during the time of its incorporation and efforts to secure a license. He helped to strengthen it, to make it good, and caused it to be worthy of credence.

"The fruit of the efforts of Dr. Helmer is the clinic fully performing the purposes of those interested in it and actually advising and treating patients. Without the work of Dr. Hel-

mer the clinic would not have been functioning at all or to the extent it was at testator's death.

"The result need not necessarily be the sole product of personal effort. One who is effective usually organizes the effort of others. Most of our great captains of industry have established their business by this method.

"The testator, by the ninth provision of the will, meant something effectual. As construed by respondents he did not refer to the New York Osteopathic Clinic. If not to that, then to what did he refer? The rational meaning of the will is that Mr. Jenkins knew that Dr. Helmer was devoting his time, thought and effort to some worthy cause that enlisted the sympathy of Mr. Jenkins, a business man of great experience and ability and caused him to endorse it and to further the effort of his friend Dr. Helmer and gave it a large sum of money. If Dr. Helmer had no clinic in mind, or was not interested in any clinic, then Mr. Jenkins was dealing in meaningless words. Such construction is the inevitable result of the logic of the contention of respondents, because they fail to prove the existence or contemplation of any other clinic.

"If Dr. Helmer alone, in a small office, advised and treated patients free of charge by the method of the School of Osteopathy prior to the death of testator, the respondents would be compelled to admit that the condition precedent had been performed. No such single-man affair would accomplish any such general good as is fairly reasonable to believe the New York Osteopathic Clinic has done or is doing. Mr. Jenkins was undoubtedly aware of that and intended to place his money in the most effective means of doing this great good for a large number of patients through the supervision and direction of his friend.

"The New York Osteopathic Clinic was known to testator as the clinic of Dr. Helmer and testator naturally designated it as 'his' clinic.

"Respondents also contended that between the execution of the will and death of Mr. Jenkins, Dr. Helmer must succeed in establishing his clinic. No such requirement is inserted in the will, nor is it necessarily contemplated by the surrounding circumstances. In fact, Dr. Helmer could have performed the con-

dition precedent by succeeding in establishing his clinic at any time before the death. The ninth paragraph provides, 'If by the time of taking effect of this my will he has failed to establish the clinic * * * the legacy shall lapse * * *.' The testator is conclusively presumed to know the law and therefore he knew the will would take effect at his death.

"In seeking the intention of the testator as shown by his will, and in giving every word of the ninth provision its fullest significance, and considering the surrounding circumstances and the purpose and effort of Dr. Helmer and the knowledge of them which the testator no doubt possessed, this clinic must have been known to the testator as the clinic which was the subject of Dr. Helmer's efforts, hence he 'succeeded' in 'establishing' 'his clinic.' Dr. Helmer was the leader of the profession. There was general recognition made of the fact that his leadership was necessary to the success of the enterprise.

"The executors, the respondents herein, immediately after the death of Mr. Jenkins, wrote to Dr. Helmer as follows:

" 'We beg to inform you that under the will of Alfred B. Jenkins, of West Orange, New Jersey, a bequest was made to you as stated in the enclosed copy of Mr. Jenkins' will.'

"In response, Dr. Helmer caused to be written to the executors a letter in part as follows:

" 'Being unable at this time to visit you in regard to the matter of the legacy referred to in article IX of the last will and testament of the late Alfred B. Jenkins. I beg to advise that the Osteopathic Clinic in which I am interested, and which I was instrumental in organizing, is officially known as the New York Osteopathic Clinic, Inc., now located at 35 East Thirty-second street, of which William Strother Jones is president. He will be able to give you all other proof that you may want regarding the organization and conduct of the clinic.'

"This letter was admitted merely as evidence of the receipt of the previous letter from the executors but not as competent evidence in any way to establish the truth of the facts stated in the letter itself. It may be, that as a statement in the regular course of business by a person since deceased, a disinterested third party at the time, making a statement disclaiming any per-

sonal interest whatsoever, that the contents of the letter are evidence of those facts. The court, however, will not now change the ruling at the hearing.

"The contention of respondents is that if Mrs. Helmer personally received the money ultimately under the will of Dr. Helmer, in which she is named the sole legatee, that she may use it as her own. The will of Mr. Jenkins must be construed in relation to the facts existing at the time of his death. Then Dr. Helmer was alive. The will of Mr. Jenkins does not provide that if Dr. Helmer dies shortly after the death of Mr. Jenkins that the fund shall vest in some other person. It seems to be perfectly clear, however, that the New York Osteopathic Clinic will succeed in an action against petitioner seeking to establish a charitable use directly for its own benefit, particularly in view of the straightforward admission contained in the letter written by Dr. Helmer on the 5th day of March, 1917, and signed on his behalf by the petitioner personally.

"Under all the circumstances it seems reasonable to conclude that the condition precedent was fulfilled. The intention of the testator was to give the fund to Dr. Helmer to be applied by him for the purpose of further establishing his clinic for the benefit of patients in the event that such progress had been made as was sufficient to show that a foundation had been laid and the continuance of the clinic was reasonably assured at the time of the death of the testator.

"Petitioner is therefore entitled to judgment, with costs."

*For affirmance*—THE CHIEF-JUSTICE, SWAYZE, PARKER, KALISCH, HEPPENHEIMER, WILLLAMS—6.

*For reversal*—TRENCHARD, BERGEN, MINTURN, BLACK, KATZENBACH, WHITE, VAN BUSKIRK—7.