This matter comes before me on exceptions to a master's report in a partition proceeding. In that report the master determined the respective interests of the parties to the lands described in the bill of complaint, the title to which lands, as to 17/20ths thereof, is not disputed, but as to a 3/20ths interest, the master found that the widow of one Antonio Robert Cella had a dower interest and that subject thereto, certain heirs-at-law of Antonio Cella, deceased, took by virtue of the Descent act, Cella having died intestate as to this 3/20ths interest. Mrs. Frances Cella Rosenbaum, widow of Antonio Robert Cella, deceased, who has remarried since her husband's death, excepts to this finding and says that by virtue of an order or decree of the Orphans Court of Atlantic county this 3/20ths interest has already been declared to be vested in her in fee-simple; that the order or decree aforesaid *Page 6 
was affirmed on appeal to the Prerogative Court and by the Court of Errors and Appeals on appeal from the latter court. The opinion in the Prerogative Court is found in In re Cella,108 N.J. Eq. 496; 155 Atl. Rep. 263, and in the Court of Errors and Appeals in 111 N.J. Eq. 356; 162 Atl. Rep. 589, and the facts are fully stated in the opinion of Vice-Chancellor Ingersoll in his opinion for the Prerogative Court.
Inasmuch as exceptant does not argue that the master's finding is legally erroneous in fixing Mrs. Rosenbaum's interest as that of doweress, and finding that the fee of the 3/20ths interest descended to the heirs-at-law of Antonio Cella, this court will not indulge in citation of the provisions of the Descent act and the decisions of the courts which bring about this result, other than to say that there seems to be no doubt but that the master was and is legally correct and that Mrs. Rosenbaum's interest is that of doweress and that she does not have a fee-simple estate.
Exceptant argues that the decree of the Orphans Court aforesaid, so as aforesaid affirmed, may not be collaterally attacked and that it is binding not only on the parties to the Orphans Court proceedings but their privies and, one step further, that the Orphans Court having construed the Cella will and having determined therefrom that Mrs. Rosenbaum was entitled to the fee in the 3/20ths interest in the lands in question, that decree binds all persons whose rights were affected by it, irrespective of their having been parties thereto.
The sole question for my decision is whether or not the Orphans Court decree aforesaid is subject to the attack made thereon, which is admittedly collateral, and my decision is that if such an attack is permitted the master's report must be affirmed, resulting in a decree in the partition proceedings that Mrs. Rosenbaum's estate is that of dower and not in fee.
It might not be amiss to state that Mrs. Rosenbaum has never conveyed, mortgaged or otherwise disposed of whatever estate she may have in the lands in question, so that if she be declared not to have the fee the rights of innocent third parties who might have purchased in reliance on the Orphans Court decree do not require protection. *Page 7 
The respondents are Jennie Cella, a sister of Antonio Cella, Giuseppe Cella, a brother of Antonio Cella, and Rose Cella Tucci, a niece of the said Antonio Cella, all of whom were parties to the litigation in the Orphans Court and to the appeals from the decree of that court. But the respondents herein, Giovanni Leverone, husband of Marie Cella Leverone, deceased, and the children of Marie and Giovanni Leverone, together with their husbands and wives, were not parties to the aforesaid litigation. These respondents, claiming the fee as heirs-at-law of Antonio Cella, say that the decree of the Orphans Court was and is void in so far as it attempted to deal with the title of the 3/20ths interest in the lands in question, because that court was absolutely devoid of any jurisdiction so to determine. My finding is that this is so and in order to substantiate this finding it is necessary to advert to the Orphans Court proceedings.
The first pleading was a petition "for direction fordistribution," filed April 30th, 1930. It sets forth the death of Antonio Cella, testate, and the granting of letters, the appointment of the executors, the filing of the executors' account and the turning over to themselves as trustees of the moneys formerly in their hands as executors in the sum of $100,392.77 corpus and $1,956.56 income, and prayed for instructions as to the distribution of these moneys. The petition further set forth the names of the parties interested in the distribution of that fund, omitting the respondents (Leverones) and it further set forth the provision of the will applicable to the distribution, the death of certain beneficiaries under 3c of the will and the names of their respective children.
The fourteenth paragraph of the petition for direction for distribution aforesaid reads as follows:
"14. The administrator of the estate of Antonio Robert Cella, deceased, claims to be entitled, under the statute ofdistribution of this State, as next of kin, both as the adopted child and grandson of the testator, to the three parts or shares directed by subdivision c in paragraph 3 of the said will to be disposed of out of said one-quarter interest to said Joseph Cella, nephew; John Cella, nephew; and Mamie Valloni, niece, of said testator, said administrator insisting that said shares
never vested in said nephews and nieces because *Page 8 
of their death prior to the death of said Antonio Robert Cella and of his death before reaching the age of twenty-five years; to the contrary, the said Lizzie Lofland or Loftus, niece, and the said Rose Cella Tucci, niece, claim to be entitled to the whole of said one-quarter interest in equal shares, insisting that by the true construction of the will of said testator, the said administrator is not entitled to distribution of said fund nor did the said Antonio Robert Cella in his lifetime, nor after his death, his estate, have any right thereto or interest therein. Petitioners are uncertain as to whom to distribute said three-fifths part of said one-quarter interest of the residue of said estate of the said Antonio Cella, deceased."
The petitioners pray, first, that the court designate and direct what security should be set aside or invested to produce the annuities under the Antonio Cella will for the benefit of Jennie Cella and Joseph Badaracco and Mary Barry. The second prayer is:
"Second: That this Court may, by its order, adjust and make just distribution of the said residue of the said estate to and among the persons who may be entitled thereto in accordance with the directions and provisions of the will of said Antonio Cella, deceased, a copy of said will and codicil is hereto attached and made a part hereof."
It will be noted from the above that no instructions were asked for any other purpose than in order that the trustees might be advised as to who was entitled to the corpus and the income arising therefrom, and in what shares, and that the corpus and income consisted of the corpus and income in money, and that there was no prayer whatsoever that the court determine to whom the real estate should go. Yet the court, after giving the instructions sought for by the petition, said by its decree: "three equal one-twentieths parts thereof, so far as the same consists of personal property, to Howard G. Harris, administrator of the estate of Antonio Robert Cella, deceased, and in so far as the same consists of real property, to the said Frances H. Cella, widow of Antonio Robert Cella, deceased."
Of course the respondents (Leverones) were not made parties. They had no interest in the personalty but they did have an interest in the realty through their mother, who died after the death of Antonio Cella, and was his sister. *Page 9 
We have, it seems to me, a decree, in so far as the realty is concerned, which is not based on any issue offered in the petition for distribution, and in addition thereto, the record shows that the Leverones, respondents herein, were not parties to the proceedings leading up to the entry of that decree and the decree of the Orphans Court which, while it has been held, had a right to construe the Cella will as an incident to its exercise of the power of distribution, did not have jurisdiction to construe that will in order to determine the title to real estate.
First as to the latter point. Did the court have jurisdiction to enter the decree as to realty?
Some doubt has been expressed as to whether or not the Orphans Court has power to construe a will, but the Court of Errors and Appeals has held that it apparently has such power. Helmer v.Yardley, 93 N.J. Eq. 661; 117 Atl. Rep. 51, and this court has also so held, Hill v. Bloom, 41 N.J. Eq. 276, 280;7 Atl. Rep. 438, and Easton v. Goodwin, 119 N.J. Eq. 114, 117;181 Atl. Rep. 275, so that conceding the power of the Orphans Court to construe wills as an incident to its exercise of jurisdiction, we ask, what is the extent of the power? In Dunham v. Marsh,52 N.J. Eq. 256; 30 Atl. Rep. 473, the court said, after holding that the Orphans Court had power to construe as incident to the due exercise of the jurisdiction, that "the binding effect of its conclusion upon the question will not extend beyond the end for which the conclusion is necessarily reached." If this is so, it is unquestionable that the only necessity for the construction of the will by the Orphans Court in order to advise the trustees to whom the personal estate should be distributed was to determine to whom and in what amounts distribution of that personalty should be made, and the decree could not go beyond that point.
Having in mind that the respondents, Leverone heirs-at-law, were not parties to the Orphans Court proceedings and that as heirs-at-law of their mother they had no interest in the trustees' account of personalty or its distribution, and that they could not be heard thereon, Bray v. Neill's Executrix,21 N.J. Eq. 342 (at p. 348), and also that the decree *Page 10 
of distribution was merely for the protection of the trustees in fixing the amount of each share of personalty and the parties entitled to receive the same, Adams v. Adams, 46 N.J. Eq. 298;19 Atl. Rep. 14, and that the decree was merely declaratory of the rights of the parties in interest, Exton v. Zule, 14 N.J. Eq. 501;Bayley v. Bayley, 71 N.J. Eq. 9; 63 Atl. Rep. 11, the conclusion must be that the respondents, Leverones, are not bound by it and that the master was justified in so finding, unless the decree of distribution comes within that class of cases where the court, having construed a written instrument such as a will or deed, the construction thereof is binding on all, whether parties or not, under the rules laid down in Newark City National Bank
v. Crane, 60 N.J. Eq. 121; 45 Atl. Rep. 975, wherein the court said (at p. 123):
"But there is a clear distinction between a decree and the law declared by the court which produces the decree, and though a party may not be bound by a decree, as such, he may be bound, so to speak, by the law which produces that decree. That is to say, his rights are affected, as all other citizen's rights are affected, by the declaration of the law made by the courts in the due administration of justice.
"This rule is illustrated in New Jersey by the line of cases which seem to have fairly established the rule that, in a suit for specific performance of a contract for the conveyance of land, where the defendant sets up as a defense a defect in the title of the complainant, and its validity depends upon the construction of a written instrument — deed or will — the court may construe the deed or will, and the construction so adopted, so far at least as is necessary for the determination of the question then before the court, will be binding, subject always to the right of appeal, on all persons interested in the question, whether parties to the suit or not. Such determination is the determination of a question of law.
"Clark v. Denton, 9 Stew. Eq. 419, and, on appeal, Ibid.534; Cruikshank v. Parker, 6 Dick. Ch. Rep. 21, and, on appeal, 7 Dick. Ch. Rep. 310; Lippincott v. Wikoff, 9 Dick.Ch. Rep. 107 (at p. 115); Fahy v. Cavanagh,44 Atl. Rep. 154. *Page 11 
"It is quite impossible to entertain the notion that after the Court of Errors and Appeals has determined that a particular estate has passed and become vested by virtue of a particular clause in a deed or will, and compelled the purchaser to accept and pay for the property on the strength of such determination, it will afterwards permit a person not a party to the record in which that determination was made, to procure from it a contrary determination. It is on the very ground that the court will in such cases stand by its determination that it undertakes to construe deeds and wills in debatable cases for the purposes of specific performance. The case of Cruikshank v. Parker, above cited, is an illustration of the power of the court to determine and finally settle a debatable question of that kind."
Surely the decree of distribution herein under consideration does not come under the rule thus above cited, but does come within the rule stated in Adams v. Adams, supra (at p.302):
"Assuming that the Orphans Court, by this legislation, was empowered to make such a decree as that pleaded, the question presented is, whether the decree made was conclusive against respondent, so as to bar her from the relief asked by her bill. If brought into court by due process of notice, the decree must bind her; if not, the proceeding as to her was coram nonjudice."
In that case the decree of distribution in the Orphans Court was held not to be a bar against a party who had not been properly noticed.
Exceptants say that a title previously passed upon, although in a suit between different parties, will not be again passed upon on the same statement of facts, presenting the same question. With this the court is in accord, provided it does not appear in the second suit that the former decision was manifestly erroneous, in which case, especially without intervening equities of innocent purchasers, the court would not repeat the error. But aside from all this, if the title to land was not in issue in the first suit, the court in the first instance would have been without jurisdiction to justify its decree.
All the Orphans Court did in construing the will was to *Page 12 
hold that Antonio Cella had died intestate as to the 3/20ths interest in his real and personal estate and all it was required to do on the petition for distribution was to say to what next of kin that interest in the personalty should be distributed. It had nothing to do with the question of where the 3/20ths interest in the realty went. The law of descent directed the vesting of that interest and it could not be directed excepting on proceedings to that end between litigating necessary parties. The Orphans Court did not change the status of Mrs. Rosenbaum, as a decree on specific performance would have done. She parted with nothing, asked for nothing, as to the realty, under the pleadings, tendered no issue to the heirs-at-law who were not parties nor privies. Myers v. Myers, 75 N.J. Law 610 (at p. 614);68 Atl. Rep. 82: "The interest of legatees under a will are several, not general. Each claims independently of the others." And 50 C.J. (at p. 407): "A privy in estate is one * * * who derives his title to the property in question by purchase; one who takes by conveyance." And (at pp. 404, 405): "that, except to the extent to which one person has succeeded to an estate or interest formerly held by another, there can be no privity between them, no matter what were or are their relations to each other, or to the same piece of property; that kinship, whether by affinity or consanguinity, does not create privity, except when it results in the descent of an estate from one to another."
Next, not only did the Orphans Court not have jurisdiction to decree the devolution of real estate, but the decree entered was outside the issue raised by the petition for distribution.
In Munday v. Vail, 34 N.J. Law 418, Chief-Justice Beasley held that:
"A decree in equity, which is entirely aside of the issue raised in the record, is invalid, and will be treated as a nullity, even in a collateral proceeding."
He further said (at p. 422):
"Jurisdiction may be defined to be the right to adjudicate concerning the subject-matter in the given case. To constitute this, there are three essentials: First. The court must *Page 13 
have cognizance of the class of cases to which the one to be adjudged belongs. Second. The proper parties must be present. And, third. The point decided must be, in substance and effect, within the issue."
The opinion in the Munday Case was cited with approval in the Court of Errors and Appeals in Reynolds v. Stockton, 43 N.J. Eq. 211
(at p. 214); 10 Atl. Rep. 385, where Mr. Justice Van Syckel said:
"A decree or judgment which is not appropriate to any part of the matter in controvery before the court can have no force. The matter in controversy is that exclusively which is presented by the pleadings and the issue framed thereby."
In Jones v. Davenport, 45 N.J. Eq. 77; 17 Atl. Rep. 570,
the Court of Chancery, through Vice-Chancellor Van Fleet, citing the Munday and Reynolds Cases, held:
"The principle is authoritatively settled, that a decree or judgment, on a matter outside of the issue raised by the pleadings, is a nullity, and is nowhere entitled to the least respect as a judicial sentence."
The vice-chancellor was reversed in the Jones v. Davenport
case (Jones v. Fayerweather, 46 N.J. Eq. 237;19 Atl. Rep. 22), but that reversal was not because the principle of law above quoted was incorrect, but because "the decree was germane to the contents of the bill."
We have, then, the Orphans Court adjudicating the devolution of real estate, as well as a court so adjudicating when that issue was not raised by the pleadings. It had no jurisdiction over the devolution of real estate. Haring v. Van Buskirk, 8 N.J. Eq. 545; Swackhamer v. Kline's Administrator, 25 N.J. Eq. 503, Inre Devine, 62 N.J. Eq. 703; 49 Atl. Rep. 138, and if the court had jurisdiction the issue was not raised by the pleadings, and in addition to this, it attempted to adjudicate a devolution of real estate without having all parties in interest in the lands before the court, to wit, the Leverones. If the Orphans Court, in the exercise of any jurisdiction which it had, had been required to construe the Cella will to determine to whom the real estate descended, it could not, by its decree, bind those necessary parties who were not before it. That all parties who may *Page 14 
become entitled to an estate under construction of a will should be made parties is academic, and those not made parties are not bound by the decree, is also well settled. Lomerson v. Vroom,42 N.J. Eq. 290; 11 Atl. Rep. 13; In re Ungaro, 88 N.J. Eq. 25;102 Atl. Rep. 244, wherein the court held:
"Persons, who by the construction of a will would be affected by the court's determination, are necessary parties to a bill for the will's construction, for without their presence before the court the construction would be a mere academic deliverance so far as they were concerned and would not be binding upon them."
The Orphans Court not having jurisdiction, its decree is not binding on the respondents.
A late case of the Court of Errors and Appeals is Maguire v.Van Meter, 121 N.J. Law 150; 1 Atl. Rep. 2d 445, wherein the court said:
"Indeed lack of jurisdiction will subject the judgment of any court to collateral attack for such judgment is wholly nugatory and may be disregarded."
 Exceptions overruled, with costs. *Page 15