19 N.J. Super. 1 (1952)
87 A.2d 764
ERNEST CRAMER AND ELLEN M. THOMPSON, PLAINTIFFS,
v.
FLORA M. ROBERTS, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF EMILIE SCHUBERT, DECEASED, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided March 21, 1952.
*5 Mr. Barney B. Brown, attorney for the plaintiffs.
Mr. Irving Shenberg, attorney for the defendant.
HANEMAN, J.S.C.
This is an action for the construction of the will of Emilie Schubert, who died on July 17, 1948. The plaintiffs, Ellen M. Thompson and Ernest Cramer, are the only heirs at law of the decedent, the former being a daughter and the latter a grandson, the son of a deceased daughter. The defendant Flora M. Roberts is the sole beneficiary named in the will of decedent, and was duly appointed administratrix c.t.a. by the Probate Division of the Cape May County Court.
Before trial the defendant's counsel submitted proof that the defendant was in such poor physical condition that she would never be able to undergo the rigors of a trial. Moreover, the evidence established that she would not even be able to endure the comparatively less upsetting effects of having her deposition taken. Therefore, it was stipulated that the trial should proceed under the rules of evidence applicable as if the defendant had died.
The will reads as follows:
 "Wildwood, N.J.
 8/29/'47
To whom it may concern 
I, Mrs. Emilie Schubert do this day & date  give all my personal belongings to my dear friend  Mrs. Flora M. Roberts.
 Emilie Schubert
 George I. Stein
 Dorothy Widmaier"
*6 The entire estate, as reported by the administratrix c.t.a., consisted of the following items:

 Cash in the sum of $3,536.32
 531/1539 shares of the capital stock of Wildwood
 Trust Co., Wildwood, N.J. appraised at 22.60
 _________
 $3,558.92

It was stipulated by counsel that the cash above set forth was contained in a tin box in decedent's possession.
Prior to her admission to the Alms House, where she resided at the time of her death, decedent had lived for about four years with Ellen Thompson, and thereafter, for approximately one week, with the defendant at her home in Wildwood. While living with the defendant, decedent had stored some items of personal property, consisting of clothing and furniture, in a garage on the defendant's premises.
The question that this court is asked to resolve is whether "all my personal belongings" as stated in the will includes the cash in the tin box and the fractional shares of stock, or whether it applies only to those articles of personally that were stored in the defendant's garage and left with her.
Defendant, by way of affirmative defenses, alleges laches and res adjudicata, and they must be considered before any discussion of the primary question, as they may preclude a determination on the merits.
In order to determine the applicability of laches the facts must be assayed. They reveal that testatrix died on July 17, 1948; letters c.t.a. were issued to the defendant Flora M. Roberts by the Surrogate of Cape May County on August 5, 1948, and the estate was administered, with the defendant distributing all of the personalty to herself and filing a release and refunding bond on September 24, 1948, without obtaining a formal order of distribution. It is admitted by both parties that plaintiffs were given no notice of the appointment of the defendant as administratrix c.t.a., and when they received knowledge thereof is not clear from the record.
*7 On August 4, 1949, a motion was made on behalf of the plaintiffs, seeking to set aside the probate of the will, which was denied by the Cape May County Court, Probate Division. An appeal was then taken to the Superior Court, Appellate Division, in which the County Court was affirmed. Subsequently, a petition to the New Jersey Supreme Court for certification was denied. The complaint in this action for the construction of said will was filed on July 26, 1950.
Mere lapse of time is not, in and of itself, sufficient to give rise to the defense of laches. Knowledge also is required. Matarrese v. Matarrese, 142 N.J. Eq. 226 (E. & A. 1948); Federal Trust Co. v. Taylor, 3 N.J. Super. 373 (Ch. Div. 1949).
In Atlantic City v. City Service Commission, 3 N.J. Super. 57 (App. Div. 1949), the court said:
"`Laches in a general sense is the neglect, for an unreasonable and unexplained length of time, under circumstances permitting diligence, to do what in law should have been done. More specifically, it is inexcusable delay in asserting a right * * *.'
Long lapse of time, if unexplained, may create or justify a presumption against the existence or validity of plaintiff's right and in favor of the adverse right of defendant; or a presumption that if plaintiff was ever possessed of a right, it has been abandoned or waived, or has been in some manner satisfied; or that plaintiff has assented to, or acquiesced in, the adverse right of defendant; or a presumption that the evidence of the transaction in issue has been lost or become obscured, or that conditions have changed since the right accrued; or a presumption that the adverse party would be prejudiced by the enforcement of plaintiff's claim."
The only allegation of prejudice or change of position of the defendant is that she now has expended the proceeds of her alleged legacy. This does not, of itself, constitute the change of position necessary for the application of laches. The delay of plaintiffs in asserting their legal rights, in the light of these circumstances, does not appear as having been prejudicial to the defendant.
It is to be noted as well that defendant, as administratrix c.t.a., bore a fiduciary relationship and did not see fit to apply to this court for a construction of the particular *8 will involved. She now seeks to plead laches for failure of plaintiffs to file a timely similar action. The court is especially loath to accord the protection to a fiduciary by a defense such as is here pleaded, under such circumstances.
Since defendant has not proved the failure of plaintiffs to bring timely action and has failed to prove any prejudice caused by lapse of time, the defense of laches fails.
Defendant alleges next that the matter herein is res adjudicata, as the parties are the same as those in the proceedings before the Probate Division of the Cape May County Court, and in the appeal to the Appellate Division of the Superior Court, as well as in the petition for certification to the Supreme Court, above referred to, and that the questions here argued were or could have been decided in that proceeding. They contend, therefore, that they are expressly barred by the adjudication itself or by failure of plaintiffs to raise the issue in that proceeding.
Res adjudicata has been defined as follows:
"Briefly stated, this doctrine is that an existing final judgment or decree rendered upon the merits by a court of competent jurisdiction upon a matter within its jurisdiction is conclusive of the rights of the parties or their privies in all other actions in the same or any other judicial tribunal of concurrent jurisdiction, on the points and matters in issue and adjudicated in the first suit. Where a right, question or fact is distinctly put in issue and directly determined by a court of competent jurisdiction in a former suit between the same parties or their privies, the former adjudication of that fact, right or question is binding on the parties or their privies in a subsequent suit, irrespective of whether the causes of action are the same."
Freeman on Judgments, p. 1322, sec. 627; Hudson Transit Corp. v. Antonucci, 137 N.J.L. 704 (E. & A. 1948).
The sole issue involved in the prior litigation between these same parties was the probate of the alleged will of Emilie Schubert. The question of the construction of this instrument was not before the court. This was not an issue and the conclusion in that suit is not res adjudicata on the issue of the construction thereof. The judgment is not a conclusive adjudication on the construction of the alleged *9 will or the effect of the provisions of the will. Jones on Judgments, p. 1733.
Defendant's further statement that the failure of plaintiffs to raise the question of a construction of the will in the prior proceeding constitutes an estoppel, is without foundation. Parties are concluded, not only to every matter offered and received to sustain or defeat a demand, but as to any other matter which might have been received for that purpose. W.D. Cashin & Co. v. Alamac Hotel Co., Inc., 98 N.J. Eq. 432 (Ch. 1925).
The problems arising in connection with the construction of the will could not have been received for the purpose of the contest of the probate, nor could the County Court construe a will, except as incidental to its jurisdiction to decree distribution. Unless an estate is ripe for distribution, no construction of the will can be there obtained. A judgment of distribution will be binding only on reasonable actual notice to all interested parties. In re Morrisse's Estate, 91 N.J. Eq. 477 (Prerog. Ct. 1920); Helmer v. Yardley, 93 N.J. Eq. 661 (E. & A. 1922); Riddle v. Cella, 128 N.J. Eq. 4 (Ch. 1940); First National Bank, &c., Montclair v. Chandler, 133 N.J. Eq. 335 (Ch. 1942).
The question of construction not being such as could have been received in connection with the probate proceedings, and not being such as was within the jurisdiction of the County Court to determine upon a suit initiated for that sole purpose, the former proceedings between these parties is held not to be res adjudicata upon the litigation now here pending. The defense of res adjudicata is without merit.
The construction of the will must now be undertaken.
The judicial interpretative function is to find the meaning of the testator as expressed in the language used, considered in the light of the attendant circumstances. Extrinsic evidence is admissible not to vary, enlarge or contradict the terms of a will, but to aid the court in ascertaining the testator's intention by placing it in the situation of the testator at the time of the execution of the will.
*10 "For the purpose of determining `the object of a testator's bounty, or the subject of disposition, or the quantity of interest intended to be given by his will, a court may inquire into every material fact relating to the person who claims to be interested under the will, and to the property which is claimed as the subject of disposition, and to the circumstances of the testator, and of his family and affairs, for the purpose of enabling the court to identify the person or thing intended by the testator, or to determine the quantity of interest he has given by his will.'"
In re Fox, 4 N.J. 587 (1950).
A further examination of the facts becomes necessary. The defendant and the testatrix were very friendly from 1944 until some time after the latter's commitment to the alms house. The testatrix had lived with her daughter, the plaintiff Ellen Thompson, for some four years prior to her removal, on August 24, 1947, to the home of the defendant. She resided with the defendant approximately one week before her removal to the alms house. When she first moved into the defendant's home she had with her some furniture and varied articles of clothing, as well as the tin box in which the cash and stock was later discovered. Before leaving the home of the defendant she apparently made a gift of her "personal belongings" to the defendant. She executed an inartistic and inartificial instrument (here in question), which was subsequently held to be her last will and testament. In re Schubert, 7 N.J. Super. 48 (App. Div. 1950). The articles above referred to were either in defendant's house or garage, where decedent left them upon terminating her residence with the defendant. The tin box containing the cash was not so left and was taken by decedent to the alms house.
The reference in defendant's correspondence to a "paper" vesting the title to various articles in her, which the deceased was reclaiming, in the absence of any other explanation, must have contemplated said will. The series of letters from the defendant to testatrix' grandson or his wife demonstrate what the parties had in mind by the expression "personal belongings." All of the letters were discussed by the defendant and deceased in the presence of the latter's grandson. *11 Although they did not eminate from the deceased, the discussions had by her, recognizing the interpretation placed by the defendant on the deceased's conduct, amount to a recognition by the latter of the manner in which the words were used. Quite patently, the defendant had no knowledge of the existence of the cash and stock until after testatrix' decease. No disclosure of their existence was made by deceased. The "gift" the parties had in contemplation (in the language of the defendant), as evidenced by the "paper" (later held to be the will) was only the various articles of personalty which testatrix had left at defendant's home when the former went to the alms house. This did not include the cash in the tin box, which she took to the alms house with her.
It must be recognized that the judicial construction given certain words or phrases is not always finally controlling in a subsequent unrelated matter, where similar words or phrases are taken out of the context. The entire particular instrument must be considered with relation to the surrounding circumstances, to ascertain the intent.
No judicial construction in New Jersey of the words "personal belongings" has been cited or found, except Case v. Hasse, 83 N.J. Eq. 170 (Ch. 1914), which is not applicable because of the there existing facts. However, in a more closely analogous case "personal effects" have been held to denote tangible property as attends the person or is worn or carried about the person. Child v. Orton, 119 N.J. Eq. 438 (Ch. 1936).
It is here held that the testatrix intended to vest the defendant only with the tangible personalty which she left at the latter's home. It follows that testatrix died intestate insofar as the above referred to stock and cash are concerned.
Judgment will be entered accordingly.